HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIK DEBOWER,<br><br>                Plaintiff,<br><br>v.<br><br>SUNGARD DATA SYSTEMS, INC., LONG TERM DISABILITY PLAN,<br><br>                Defendant. | No. 11-cv-5911-RBL<br><br>ORDER<br><br>(Dkt. #17) |

Plaintiff has filed suit seeking long-term disability benefits under an insurance plan subject to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Defendant moves for summary judgment, arguing that Plaintiff has failed to produce evidence of a disability. For the reasons stated below, Defendant's Motion for Summary Judgment must be denied.

I. **BACKGROUND**

Plaintiff is covered under Sungard Data Systems' long-term disability plan, issued by Aetna Life Insurance. (Def.'s Mot. for Summ. J. at 1.)[1] Plaintiff worked as a "technical consultant" for Sungard until August 2008, when he quit and applied for long-term disability benefits for a degenerative lower-back impairment. (*Id.* at 3.) The plan provided a two-tier system of benefits. An applicant would be able to claim benefits for two years so long as he is

---

[1] Although construing all inferences in favor of Plaintiff (*Scott v. Harris*, 550 U.S. 372, 378 (2007)), the non-moving party here, the Court must rely on Defendants' briefing for certain background because neither the Complaint, nor Plaintiff's briefing, contains a factual summary.

Order - 1

disabled *from his own occupation*. After two years, however, an applicant may receive benefits only if he is disabled from performing "*any reasonable occupation*." (*See* Pl.'s Resp. at 3; Decl. of Sarah Swale, Ex. A.)

In November 2008, a little more than two months after leaving Sungard, Plaintiff began receiving disability benefits. (Def.'s Mot. for Summ. J. at 3.)

In "late 2009," Plaintiff saw doctors at the University of Washington, who recommended "continued activity" and "lifestyle changes" to alleviate his lower-back pain. (*Id.*) In March 2010, however, Plaintiff sought a second opinion from Dr. Richard Wohns, a surgeon at South Sound Neurosurgery. (*Id.*) Dr. Wohns recommended surgery and operated on Plaintiff in July 2010, performing "L4-5 diskectomies, replacement of the L4-5 disk with Prodisc-L (an artificial disk), and fusion at L5-S-1, with no complications." (*Id.* at 4.) On July 16th, ten days after surgery, Plaintiff's regular physician, Dr. Nichol Iverson wrote that "[t]here has been no post operative complications. Patient's symptoms are improved compared to preoperative. Post operative pain has been moderate. Pain medications include: Percocet." (Swale Decl., Ex. A at 225.) On July 28th, Plaintiff returned to South Sound Surgery for a follow-up. Defendant stresses that the post-op notes state that Plaintiff had "full motor strength" and normal "ambulation" and gait. (Def.'s Mot. for Summ. J. at 4.) The notes also state that Plaintiff rated his pain 7 out of 10.   (Swale Decl., Ex. A at 229.)

Plaintiff continued with check-ups at South Sound Surgery in September and October. Defendant argues that Dr. Wohns failed to fill out a capabilities-and-limitations worksheet in early November and that this failure "indicat[es] that Dr. Wohns did not believe Plaintiff had any current work restrictions." (Def.'s Mot. for Summ. J. at 4.) Apart from the difficulty of inferring information from an omission, Dr. Wohns' notes also indicate that he expected to see Plaintiff two weeks later. (Swale Decl., Ex. A at 250.)

In November 2010, as Plaintiff's disability standard changed from disabled-from-his occupation to disabled-from-any-reasonable occupation, Aetna initiated a review. Aetna first requested that Dr. Karl Manders, a doctor certified in neurological and pain medicine, perform a peer consultation with Dr. Wohns. (Def.'s Mot. for Summ. J. at 5.) Dr. Wohns did not respond.

Dr. Manders recorded that as of November 2, 2010, "Dr. Wohns opines the claimant is unable to work," which would seem to contradict Defendant's argument that Dr. Wohns' failure to complete a capabilities worksheet indicates that Plaintiff had no restrictions. (Swale Decl., Ex. A at 263.) Dr. Manders notes that "a single clinic note from Dr. Wohns" in the postoperative record "indicates the claimant has 5/5 lower extremity pain, normal heel toe gait with no other data." (*Id.*) "He is noted to have decreased strength and toe rise." (*Id.*) But, Dr. Manders concluded that more recent records indicated full motor strength and normal walking. Thus, he ultimately concluded that Plaintiff "was not functional[ly] impaired at present time." (*Id.*)

Aetna also commissioned a "transferable skills analysis" and a labor-market survey by Coventry HealthCare. (Def.'s Mot. for Summ. J. at 5.) Coventry concluded that Plaintiff had transferable skills and could work in sedentary positions within Plaintiff's labor market. (*Id.*)

Lastly, Aetna requested that Eleanor Newton, a registered nurse, review the file. Aetna's file contains simply a brief note stating that the "[r]eview of medical records [is] well documented," and that there is "no objective evidence of functional impairment . . . ." (Swale Decl., Ex. B at 127–128.) To be clear, it appears that Ms. Newton did not contact Plaintiff; rather, she reviewed Aetna's existing file for thoroughness.

Aetna denied benefits on January 14, 2011. Plaintiff appealed the decision, highlighting records he argues Aetna ignored as well as seeking to supplement his medical records. Plaintiff notes that in December 2010, his physical therapist stated that "Erik continues to have a difficult time with ADLs." (Swale Decl., Ex. C at 255.) The records state that although Plaintiff's "left knee problem reduced significantly," the pain has "taken a toll on his activity progression." (*Id.*)

After the denial of benefits, Plaintiff immediately saw Dr. Iverson. Dr. Iverson's notes state the following: "Pt states he would like to discuss long term disability." (Swale Decl., Ex. B at 281). He described his pain as "stabbing and piercing" and stated that the pain medications caused migraines. (*Id.*) Plaintiff stated that his "pain has not been any different that before the surgery," although he had not had the right leg weakness. (*Id.* at 282.) The notes state that "Aetna is long term disability, but is also associated with Social Security." (*Id.*) Dr. Iverson's

notes state that "[m]edication keeps [Plaintiff] fuzzy at times, and he feels that he would have a hard time doing much of anything, as he lies down up to three or four hours a day." (*Id.*)

On February 4, 2011, the Social Security Administration determined that Plaintiff was disabled, meaning that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[2] (Swale Decl., Ex. B at 288.) The administrator noted Plaintiff's surgery and his continued post-operative complaints of severe pain. (*Id.* at 290.) The agency found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible." (*Id.* at 292.) Defendant argues that the Social Security Administration improperly relied on pre-operation medical images in its conclusion. (Def.'s Mot. for Summ. J. at 8.)

In March 2011, during a checkup at South Sound Surgery, Plaintiff was noted to have full motor strength, "some atrophy of the right calf," normal ambulation and gait, and lumbar spasms. (Swale Decl., Ex. B at 495.) In April, during another checkup at South Sound, Plaintiff was noted to have normal toe ambulation, but weak heel ambulation on the right, with discomfort. (*Id.* at 490.) He had no back spasms and a normal range of motion. (*Id.*) The notes recommend steroid injections and additional x-rays. (*Id.* at 492.)

At his counsel's request, Plaintiff underwent a "physical capabilities evaluation," a three-and-a-half-hour assessment of his capacity to sit, walk, climb stairs, and lift small loads. (*See* Swale Decl., Ex. B at 514.) The results state that Plaintiff has a decreased range of motion, decreased strength "for right ankle dorsi flexion and toe extension and inversion," "below competitive productivity levels on timed activity," below normal grip and pinch strength, good "body mechanics, poor posture, and fair balance." (*Id.* at 517.) The report concludes that Plaintiff can perform work in a sedentary to light work environment but cannot sit for more that 30 minutes at a time. (*Id.* at 516.) At most, the report suggests, Plaintiff can "alternately sit/stand/walk for 3 hours at a time; 6.5 hours in an 8-hour day." (*Id.*)

Defendant argues that the capabilities evaluation is flawed because the therapist, "with no explanation, opined that Plaintiff could not work more than 6.5 hours a day." (*Id.* at 515.) In

---

[2] Rather remarkably, the Social Security Administration defines "substantial gainful activity" as "work that is both substantial and gainful." (Swale Decl., Ex. B at 289.) The Court is forced to wonder who writes this stuff.

other words, the evaluation notes certain impairments—e.g., Plaintiff's limp, pain in his lower back, muscle weakness, fatigue—but fails to explain how those impairments translate to the 6.5-hour conclusion. (Def.'s Mot. for Summ. J. at 8.)

Following Plaintiff's appeal, Aetna referred the file to Dr. Robert Swotinsky, certified in occupational medicine. Dr. Swotinsky conferred with Dr. Wohns, who stated that "care is now primarily by the pain management physician," and Plaintiff "still reported low back pain, but it is light pain and largely resolved." (Swale Decl., Ex. B at 203.) Dr. Wohns further stated that Plaintiff suffers from sacroilitis and possibly facet joint syndrome. (*Id.*)

On October 6, 2011, Aetna denied Plaintiff's appeal. (Def.'s Mot. for Summ. J. at 10.)

## II.  DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

The standard of review of a benefit determination is *de novo*. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under *de novo* review, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). The administrator's decision is accorded no deference. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 n. 2 (9th

Cir. 1999). The Court evaluates whether the claimant was "entitled to benefits based on the evidence in the administrative record and other evidence as might be admissible under the restrictive rule of *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995)." *Opeta v. Nw. Airlines Pension Plan for Contract Empls.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (internal quotation omitted).

Here, the Court must conclude that genuine issues of material fact preclude summary judgment. As the background above suggests, numerous sources indicate that Plaintiff has real impairments—lower back pain, some muscular weakness, and difficulties arising from the medications associated with these impairments. But, the parties differ on whether Plaintiff's impairments are functionally disabling. Defendant highlights various doctors' statements noting that surgery improved Plaintiff's condition and that his pain is "light." It argues that the capabilities evaluation, which states that Plaintiff cannot sit for more than 30 minutes at a time, fails to explain its finding. But, the evidence suggests that Defendant failed to make a meaningful effort to determine if the capabilities evaluation was correct. An insurer is required "to have a meaningful dialogue with its beneficiary in deciding whether to grant or deny benefits." *Saffon v. Wells Fargo & Co. Long Term Disability*, 522 F.3d 863, 870 (9th Cir. 2008) (citing *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)). "[I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." *Booton*, 110 F.3d at 1463. The Court understands that Aetna administrators had some difficulty contacting Plaintiff's doctors, but given the relevance of the capabilities evaluation, further effort may have been appropriate.

Additionally, Plaintiff appears to have repeatedly complained of serious pain, which multiple doctors and the Social Security administrator found credible. Defendant argues that there is no objective evidence of disability, and administrators are rightly wary of relying solely on a claimant's subjective pain complaints. But objectively measuring pain is, in many cases, impossible. *See Saffon*, 522 F.3d at 873 (noting that "disabling pain cannot always be measured objectively"). The difficulty of measurement, however, does not mean claims of pain are false.

At this stage, without findings of fact, the Court cannot determine as a matter of law that Plaintiff is or is not disabled within the plan's definition.

### III. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Dkt. #17) is **DENIED**.

Dated this 21st day of November 2012.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE